UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

JOHNNY BAKER,

    Defendant.
_____/

Case No. 10-20513

HON. GEORGE CARAM STEEH

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR REDUCTION OF SENTENCE (ECF NO. 77)

Defendant Johnny Baker seeks a reduction of sentence pursuant to 18 U.S.C. § 3582(c). For the reasons explained below, Baker's motion is granted.

BACKGROUND FACTS

Baker, along with his cousin, Antwann Baker, committed a string of retail store robberies in 2010. Baker pleaded guilty to four counts of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a), and four counts of aiding and abetting the use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Although the parties agreed that his guideline range for the robbery counts was 87-

108 months, Baker faced a mandatory sentence of 82 years for the four § 924(c) counts. *See* 18 U.S.C. § 924(c)(1)(A). At the time of his sentencing in 2011, the statute provided for a mandatory sentence of 7 years for brandishing a firearm during a crime of violence, and a mandatory consecutive sentence of 25 years for each "second or subsequent" firearm violation. *See Deal v. United States*, 508 U.S. 129 (1993). Recognizing Baker's cooperation, the government dismissed one of the § 924(c) counts, effectively reducing his mandatory sentence from 82 years to 57 years. *See* ECF No. 30 at PageID 135. In light of the "enormous" required sentence for the three § 924(c) violations, the court sentenced Baker to time served for the four robbery counts, resulting in a total sentence of 57 years (684 months). *See id.* at PageID 149; ECF No. 26.

In 2018, Congress passed the First Step Act, which amended § 924(c) to eliminate the "stacking" of mandatory sentences for successive violations charged in the same indictment.[1] Under the First Step Act, a 25-year sentence for a second § 924(c) conviction may only be imposed after the first conviction had become final. First Step Act of 2018, Pub. L. No.115-391, § 403, 132 Stat. 5194, 5221-22 (2018); 18 U.S.C.

---

[1] The First Step Act "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).

§ 924(c)(1)(C). Thus, if sentenced today, Baker would face a mandatory sentence of 24 years (7 years for brandishing a firearm on Count 2, 10 years for discharging a firearm on Count 6, and 7 years for brandishing a firearm on Count 8), rather than 57 years. 18 U.S.C. § 924(c)(1)(A).[2]

## LAW AND ANALYSIS

### I. The Court's Authority to Grant Compassionate Release

Based upon this significant change in the law, among other reasons, Baker seeks compassionate release. Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The statute provides for a limited exception, known as "compassionate release," which is governed by 18 U.S.C. § 3582(c)(1)(A). This section allows for judicial modification of an imposed term of imprisonment, after consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), when three criteria have been met: (1) the defendant has first exhausted all administrative remedies with the Bureau of Prisons; (2) "extraordinary and compelling reasons warrant such a reduction"; and (3) the reduction is consistent with the "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

---

[2] The possession of a firearm in furtherance of a crime of violence carries a minimum five-year sentence, the brandishing of a firearm carries a minimum of seven years, and the discharge of a firearm carries a minimum of ten years. 18 U.S.C. § 924(c)(1)(A).

-3-

Prior to the effective date of the First Step Act, only the Bureau of Prisons could move for compassionate release, upon a finding that extraordinary and compelling reasons supported a sentence reduction. The Director of the BOP "rarely" made such motions. *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek compassionate release on his own behalf, the purpose of which was to expand the use of compassionate release. *See, e.g.*, First Step Act § 603(b), 132 Stat. 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement by bill co-sponsor Senator Cardin, noting that it "expands compassionate release under the Second Chance Act and expedites compassionate release applications").

Congress did not define the "extraordinary and compelling reasons" justifying a sentence reduction under § 3582(c)(1)(A), but delegated that responsibility to the Sentencing Commission, with the directive that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Sentencing Commission promulgated a policy statement, U.S.S.G. § 1B1.13, and

accompanying application notes. The application notes provide that "extraordinary and compelling reasons exist" as a result of the defendant's (1) serious medical condition; (2) advanced age and health; (3) family circumstances; or (4) "other reasons . . . "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. 1. Baker seeks compassionate release based upon the "other reasons" catch-all provision. In his case, the BOP has not recommended a sentence reduction, raising the question of whether the court may determine for itself whether "other reasons" support compassionate release.

The Sentencing Commission has not amended § 1B1.13 since the passage of the First Step Act. The current policy statement continues to provide that the court may grant a sentence reduction "only upon motion of the Director of the Bureau of Prisons," which is contrary to the First Step Act amendment permitting a defendant to file a motion on his own behalf. *See id.* Courts have viewed the outdated policy statement, insofar as it reserves the determination of "other reasons" to the Bureau of Prisons, as inconsistent with the First Step Act and no longer "applicable." Indeed, allowing the BOP to retain "veto power" would be contrary to Congress's intention to expand the use of compassionate release. *United States v. Maumau*, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020). "[T]he

dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." *United States v. Young*, __ F.Supp.3d __, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). Thus, a majority of district courts have concluded that although the outdated policy statement provides helpful guidance, it does not "constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction." *United States v. Clausen*, 2020 WL 4260795, at *4 (E.D. Pa. July 24, 2020) (citations omitted); *accord United States v. Haynes,* __ F.Supp.3d __, 2020 WL 1941478, at *15 (E.D.N.Y. Apr. 22, 2020) (citing cases); *Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). Indeed, "final authority over a request for a sentence reduction has always been within the purview of the district court, not the Bureau of Prisons." *Bellamy v. United States*, __ F.Supp.3d __, 2020 WL 4208446, at *5 (E.D. Va. July 22, 2020).

This court agrees with the majority position that it may determine what constitutes an extraordinary and compelling reason justifying compassionate release, without being restricted by the assessment of the BOP. In addition to presenting extraordinary and compelling reasons, the

defendant must "not [be] a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), and the factors set forth in § 3553 must support a sentence reduction. See 18 U.S.C. § 3553(a); *United States v. Kincaid*, 802 Fed. Appx. 187 (6th Cir. 2020). These factors include the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

## II. Exhaustion of Administrative Remedies

Baker sought compassionate release from the Bureau of Prisons, which denied his request. Accordingly, he has exhausted his administrative remedies and the court may consider his motion. See *United States v. Alam*, 960 F.3d 831, 833-35 (6th Cir. 2020) (holding exhaustion to be mandatory).

## III. Extraordinary and Compelling Reasons

Baker argues that he is eligible for compassionate release because of his harsh sentence, which would not be imposed under the law today, as well as his extraordinary record of rehabilitation. Baker was 24 years old when he received a mandatory sentence to effectively spend his life in prison. His current projected release date is May 5, 2060. On its face, his

-7-

57-year (684-month) sentence is extraordinarily long, and it appears particularly disproportionate when compared to average federal sentences for similar or more serious crimes: robbery (109 months); firearms (50 months); murder (255 months); drug trafficking (76 months); and kidnapping (171 months). United States Sentencing Commission, *2019 Annual Report and Sourcebook of Federal Sentencing Statistics*, Table 27.[3] If sentenced for the same conduct today, Baker would face a mandatory sentence of 24 years, less than half of what he received.

Numerous district courts have found that this "drastic change" in the law, eliminating such lengthy mandatory sentences, constitutes an extraordinary and compelling reason to consider a sentence reduction. *See, e.g., Young*, 2020 WL 1047815, at *8; *Maumau*, 2020 WL 806121, at *7; *United States v. Redd*, __ F.Supp.3d __, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Decator*, __ F.Supp.3d __, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020); *United States v. Wade*, 2020 WL 1864906, at *6 (C.D. Cal. Apr. 13, 2020); *Haynes*, 2020 WL 1941478, at *15; *Bellamy*, 2020 WL 4208446, at *7; *Clausen*, 2020 WL 4260795, at *8.[4]

---

[3] https://www.ussc.gov/research/sourcebook-2019.
[4] A minority of courts disagree that a change in the law can constitute an extraordinary and compelling reason. *See United States v. Martin*, 2020 WL 4464430, at *3 (S.D. Ill. Aug. 4, 2020).

Indeed, "it is hard to argue that the manifest unfairness of keeping a man in prison for decades more than if he had committed the same crime today is neither extraordinary nor compelling."  *United States v. Brown*, 2020 WL 2091802, at *9 (S.D. Iowa Apr. 29, 2020).

The government argues that the change in law does not constitute an extraordinary and compelling reason, given that Congress did not make the amendment to the § 924(c) "stacking" sentencing scheme retroactive.  As many courts have noted, however, Congress's failure to make the amendment retroactive does not necessarily preclude the court from considering the change in the context of a motion for compassionate release.  *See, e.g.*, *Maumau*, 2020 WL 806121, at *7 ("It is not unreasonable for Congress to conclude that not <u>all</u> defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve <u>some</u> defendants of those sentences on a case-by-case basis."); *Decator*, 2020 WL 1676219, at *4 ("[G]ranting compassionate release on the basis of the amended § 924(c) is not obviously contrary to congressional intent."); *United States v. Adeyemi*, 2020 WL 3642478, at *23 (E.D. Pa. July 6, 2020) ("A retroactive amendment to section 924(c) would have required the release of all defendants similarly situated to Mr. Adeyemi, while compassionate release

motions permit sentence reductions on an individualized basis, only in the most extraordinary circumstances and only if the defendant meets specific criteria such as the 3553(a) factors and would not endanger the community.").

In addition to the change in law, Baker's significant evidence of rehabilitation supports a sentence reduction. Despite his long sentence, all accounts indicate that he has approached his term of imprisonment with optimism and a desire to be productive and transform his life. He has provided several letters from prison officials, attesting to his positive attitude, conscientious and responsible conduct, and strong family relationships. ECF No. 77 at PageID 535-37. He has completed approximately 50 educational programs while incarcerated. Baker is currently housed in the Reentry Program Unit, which "only selects individuals that are discipline free, active in all programs, and maintain the highest standards while being incarcerated." ECF No. 77 at PageID 537. Employed as a Reentry Clerk, Baker serves as a mentor for inmates in preparation for their release. Letters from family members, including two teenage daughters, demonstrate his commitment to maintaining close family ties. He is an "eager and enthusiastic" participant in the Free Minds Book Club and Writing Workshop, and his writings include poems and an

essay about parenting behind bars that was published in the *Washington Post*. *Id.* at PageID 564-65. He also engages in religious studies as a "sincere Bible student." *Id.* at PageID 560.

The court is persuaded that the combination of Baker's remarkable record of rehabilitation, his relative youth at the time of his offense, the length of his sentence, and the disparity between his sentence and those sentenced for similar crimes after the First Step Act create an extraordinary and compelling basis for relief. *See, e.g., Bellamy*, 2020 WL 4208446, at *7; *Maumau*, , 2020 WL 806121, at *7.

IV. Policy Statement and § 3553 Factors

In addition to presenting an extraordinary and compelling basis for relief, Baker must show that he is not a danger to the community and that the § 3553 factors support a sentence reduction. Although the government argues that Baker should not qualify for compassionate release based upon his criminal history and offense conduct, it ignores his substantial evidence of good conduct and rehabilitation during his decade in prison. On this record, the court finds that Baker is unlikely to present a danger to the public upon release.

The court also considers the § 3553 factors, including the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment, general and specific deterrence, and the protection of the public.  Baker's offenses are undeniably serious; however, the punishment he received is significantly greater than necessary to accomplish the goals of respect for the law, just punishment, deterrence, and the protection of the public.  The § 3553 factors support a reduction in Baker's sentence.

V.     Conclusion

For all of these reasons, the court will grant Baker's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c).  Although Baker seeks what is known as "compassionate release," the court need not grant his immediate release from prison.  Rather, "a downward adjustment may be made even if it results in [Baker's] continued incarceration."  *Maumau*, 2020 WL 806121, at *8; *Young*, 2020 WL 1047815, at *10; *Clausen*, 2020 WL 4260795, at *8.  The court will schedule a hearing to determine the appropriate sentence, in light of the § 3553 factors and any additional information provided by the parties.

## ORDER

IT IS HEREBY ORDERED that Defendant Baker's motion to reduce sentence (ECF No. 77) is GRANTED. The court will issue a notice of sentencing hearing after consultation with the parties.

Dated: August 13, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 13, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk